## Case No. 17,112a.

### In re WALSH.

[10 Reporter, 549.] [1]

Circuit Court, S. D. New York. Oct. 11, 1880.

SUPERVISOR OF ELECTIONS — REMOVAL — INSTRUCTIONS—RETAINING NATURALIZATION PAPERS.

1. The circuit court will not remove a chief supervisor of elections, for issuing of instructions which are the same as those previously issued, and shown to have been approved by the district attorney and circuit judge.

2. Instructions to the supervisors to take from a person who asks to be registered as a voter his certificate of naturalization are unauthorized by the statute.

On petition. The petitioner alleged that his certificate of naturalization had been taken from him, on his attempt to register as a voter, under instructions to that effect issued by the chief supervisor; and an order was issued to the chief supervisor, John I. Davenport, to show cause why he should not be removed.

E. Ellery Anderson and George W. Wingate, for petitioner.

Elihu Root and E. W. Stoughton, for respondent.

BLATCHFORD, Circuit Judge. We are prepared to dispose of this matter now. The two judges concur entirely in their views upon the subject, although the decision must be considered as being made by the circuit judge sitting alone, with the advice and concurrence of Judge CHOATE. We do not

[1] [Reprinted by permission.]

think a case is made out for removing Mr. Davenport under this petition. The instructions so far as the substance and materiality of them are concerned—everything that precedes the second further direction—appear to have been the same that were issued previously and passed upon and approved so far as it went (ex parte, if you please) by the district attorney and Judge WOODRUFF. Under such circumstances this court would not be authorized to say that the reissuing of these instructions was evidence of want of fidelity or of want of capacity on the part of the chief supervisor. Certainly these circumstances repel all question, in our judgment, of any bad faith, while at the same time they may not be conclusive upon this court sitting judicially upon the question involved. Now, as to the instructions, they have been argued to us and we have been asked to express an opinion in regard to them. The decision not to remove Mr. Davenport perhaps disposes of the prayer of this petition, but we deem it proper, in view of the questions involved and of the argument of counsel on both sides, to give our views upon the instructions as the views of the court. We consider these inquiries that are to be made of the person presenting an 1868 certificate as proper. We do not understand there is anything in these instructions which in any manner is intended to interfere with the proper prerogative and business of the inspectors. They are to decide whether the man is to be registered or not. If these questions or any other questions are asked of the party, and he refuses to answer one way or the other, upon that the state statute interposes, and the consequence is that he cannot be registered. If he says that he will not answer them because they tend to criminate him, that makes no difference; he does not answer, no matter what the reason is. These instructions were made with reference to the laws referring to the registration and elections of the state of New York, and we consider them pari passu with the questions which are authorized or required to be put to the person offering to vote upon naturalization papers. They not only are required to put certain questions, but such other questions as affect the right of a man to vote; and that is also the purport of the oath. Now, it says here that this supervisor may challenge the man's right to register who persists in registering on an 1868 paper. Well, we think sufficient is shown to warrant an inquiry into these 1868 papers. We do not go behind the affidavit of Mr. Davenport. We have not the facts before us upon which he acted, and must take his affidavit upon that subject. Now, he is to challenge the right to register. The right of challenge is expressly given by the statute of the United States, and the statute of the state gives the right of challenge to any voter, and not only gives a voter the right to challenge but requires that every supervisor

shall be a voter. Now, the supervisor is to require the statutory oath to be put to the applicant. The inspector is to put the statutory oath. Under the state law he is required to do that. When these oaths are put, of course the man is to be examined. How is he to be examined? Why, the state law provides that the inspector shall put the questions. Well, this instruction says: "Upon such challenge, after the party is sworn, you will make of him the following inquiries," and then on the top of the second page it says: "Whenever upon your examination of any person applying for registration it shall appear that such person," etc. It does not follow at all from that that the questions are to be put directly by the supervisor to the applicant. The presumption is that they are to be put in the usual lawful way through the inspector. That is the presumption and the meaning of it. The inspector may not put these questions. He may have his attention called by the supervisor to the advisability of putting the questions and he may refuse to put them, but nevertheless they are proper questions for the supervisor to ask to have put. The inspector may not put them, or the voter may refuse to answer them or may answer them, but these questions, it seems to us, are questions which are proper to be put—every one of them. Why, the theory of the law for registration in the state of New York is that the right of a naturalized person to vote, even though he presents a certificate of naturalization, is to be inquired into, and there is nothing in the decision of the court that touches this question or conflicts or interferes with it. Then comes the instruction: "That whenever upon your examination of any person applying for registration it shall appear that such person has in his possession a certificate of naturalization improperly issued or granted, or improperly obtained, you will see that such person is not allowed to register," etc. Well, that is not an instruction of prohibition. If the inspector puts the man's name down as a registered man this instruction does not mean that the supervisor is to seize the paper and tear it out of his hands: it merely intends that he is to use proper means to see that the inspector does not register him. But as a matter of course the inspector may still register him. It is a formal expression, perhaps not as accurate as might be, but at the same time a form that may very well be used, and we do not understand that it conflicts in any manner with the freedom of action of the inspector.

Then the next instruction is, "and will take from him his certificate and attach thereto a statement of the facts, as given by the applicant, together with his name and address, and return the same with your book to the assembly district aid, to be forwarded to the chief supervisor." That portion of this direction we regard as unwarranted and not to be supported. We regard it as tending to

a breach of the peace, and as totally unauthorized under the circumstances in which it is directed. If a man is arrested for illegal registration by a marshal, or for attempting to register illegally, or by the supervisor for violation of the statute, and in connection with that arrest the criminating and inculpating certificate is taken, together with the person, to the magistrate, that may be a proper proceeding, but a very different proceeding; and we do not think this language, "will take from him his certificate," is capable of the modified construction sought to be given to it by one of the counsel —that he is merely to receive the certificate if the man gives it up. It is capable of a different construction; and more than that, in the petition in this case it is stated that in several cases the certificate had been taken from the party, and on demand to have it given back the supervisor had refused to return it. Well, of course receiving it after it has been submitted to the inspector and the inspector has passed it to the supervisor and the man asks it back, withholding it then amounts to the same thing as if he had taken it forcibly from him, and we do not think that that portion of the instruction is to be upheld or can be warranted. In regard to the point first raised by Mr. Wingate in his last observations to the court about the evidence to be taken of naturalization, either of the original certificate or some substituted evidence, it would seem that perhaps this instruction goes a little beyond the intent of the state statute. The state statute seems to be that he is to produce the original certificate, and if that is lost then the applicant himself may take the oath. This instruction seems to proceed upon the principle that the best attainable evidence must be produced, either the original certificate or a duplicate. It says: "If for any substantial reason, such as that the records of the court where the applicant was naturalized have been burned or otherwise destroyed, so that he cannot obtain a duplicate, then the evidence of any one who knows the fact of the naturalization of the applicant or who has seen his certificate may be received." That is put forth as the opinion of the chief supervisor of elections. It may or may not be acted upon by the inspectors. It would seem, so far as the court now perceives, to be a departure somewhat from what is required by the state statute. We have not had an opportunity to examine it with care, and it has not been commented upon by the other side. But the departure is not a very grave or serious one, and the matter is to be regulated unquestionably by the inspectors. This is an instruction to the supervisors. If the supervisor sees fit to say to an inspector, under these instructions, that the law is so and so, why, unquestionably the inspector knows better, for he has got better guidance under the state law and will continue to act as he pleases. It does not

seem to amount to much one way or the other. At all events, it is not sufficient ground for removal nor for more serious comment. Motion denied.